## MARTIN et al. v. MEANS.

Court of Appeals of Kentucky.

May 29, 1953.

S. Y. Trimble IV, Hopkinsville, for appellants.

J. C. Fleming, Hopkinsville, for appellee.

CLAY, Commissioner.

Appellee brought suit for a balance due on an electrical wiring contract. Appellants' defense was that appellee had abandoned the contract without completing it according to its terms, and they attempted to set-off a claim for approximately $1700 they had expended to install a different type of lighting fixture. The action was transferred to equity and judgment was entered in appellee's favor for the amount claimed, less a credit of $400, which the Chancellor abated on the amount due. On this appeal appellants contend the judgment is contrary to the law and evidence.

Appellants were desirous of replacing certain electrical installations in their grain mill and bids were requested from electrical contractors. Appellee submitted a signed written bid offering to install dustproof fixtures for a set price, and he was engaged to do the work. About two weeks later appellee signed a redrafted contract. This contract embodied the terms of appellee's original bid, including the dustproof requirements, but there had been added by appellants an additional specification which provided that the installation would "Meet Class 2, Group G wire in all locations where grain dust occurs." Appellee testified that when he signed the contract he did not know that this provision had been inserted therein.

Appellee installed proper wiring for the job, but the light fixtures did not comply with the Class 2, Group G standards of the National Electrical Code. Thereafter appellants employed another contractor to install a different type of dust-free lighting fixture which did comply with this standard.

Apparently the Chancellor took the view that the written contract was not controlling because appellee had begun the work on the basis of his original bid. However, in his opinion the type of fixture installed by appellee did not meet the standard the parties had intended, even without the particular specification in the contract. On equitable grounds he therefore allowed appellants a reduction in the contract price of $400, which he stated was "the approximate cost of the fixtures" which were substituted. As a matter of fact, this sum did not accurately reflect the cost of the fixtures, but was roughly the additional amount paid by appellant to have them installed.

We believe the Chancellor erred in not holding appellee to the terms of the written contract. The change in the contract made by appellants was not for the purpose of requiring appellee to do something beyond the scope of his bid, but was a clarifying specification to make definite the character of the fixtures which appellee was to install. If appellee did not intend to meet this specification, it was his duty to notify appellants. Certainly they did not receive what they had bargained for.

Since appellee was bound by the written contract and he failed to perform it, he should be charged with the additional cost of having the work completed according to its terms. There is no proper legal or equitable ground upon which we can divide this item between the two parties. On the evidence appellants were entitled to a full credit of $1749.87, which was shown to be the reasonable cost of having the work completed in such a manner as to comply with the contract.

The judgment is reversed for consistent proceedings.